Robert M. GARRETT, Private, U.S. Marine Corps, Petitioner,

v.

Gregory LOWE, Colonel and the United States, Respondents.

No. 93–8024.
[No. 52,635.] *
CMR No. 82–2670.

U.S. Court of Military Appeals.

Argued Nov. 1, 1993.

Decided June 15, 1994.

For Petitioner: *Lieutenant David P. Sheldon*, JAGC, USNR (argued); *Commander Philip D. Cave*, JAGC, USN (on brief).

For Respondent: *Captain Laulie S. Powell*, USMC (argued); *Colonel T. G. Hess*,

* Original Docket Number.

USMC, *Commander S. A. Stallings,* JAGC, USN, *Captain J. F. O'Connor,* USMC (on brief).

### Opinion of the Court

WISS, Judge:

This is a petition for extraordinary relief in the nature of error *coram nobis* that asks for relief from certain alleged instructional errors at petitioner's court-martial proceedings in 1981 and 1983. *See* 28 USC § 1651(a). This Court issued an order for the Government to show cause why the requested relief should not be granted, and the Government filed its answer brief. Petitioner initially filed *pro se* but, thereafter, was appointed appellate counsel; those counsel, in turn, filed a reply brief.

Now, after full consideration of the arguments made in these pleadings and during oral argument in this cause, we decide to grant the petition to the extent indicated, *infra.*

### I

Garrett presently is confined at the United States Disciplinary Barracks at Fort Leavenworth, Kansas. He was convicted by general court-martial in November 1981 of attempted robbery, conspiracy to commit robbery, unpremeditated murder, and felony-murder, in violation of Articles 80, 81, and 118, Uniform Code of Military Justice, 10 USC §§ 880, 881, and 918, respectively. His approved sentence extended to dishonorable discharge, confinement for life, total forfeitures, and reduction to the lowest enlisted grade.

On appeal, the Court of Military Review affirmed the conviction of attempted robbery, but it set aside the remaining findings and the sentence and authorized a rehearing. 16 MJ 941, 950 (1983). The rehearing occurred during October and November 1983. This time, Garrett was convicted of the conspiracy and felony-murder specifications, to add to the attempted robbery that had been af-

firmed by the court below, and was given the same sentence that he had received in 1981. These findings and sentence were approved by the convening authority and affirmed by the Court of Military Review in an unpublished opinion dated January 25, 1985. On February 21, 1986, this Court granted Garrett's petition for review [No. 52,635] and ultimately affirmed the decision below. 24 MJ 413 (1987).

Nothing else of note occurred in this case until January 29, 1992, when Garrett—likely spurred by the intervening success of his co-accused Dodson in seeking relief in the Federal courts in Kansas [1]—filed a petition for a writ of habeas corpus in the U.S. District Court for Kansas. Then, well over a year later and while that petition still was pending, Garrett filed the instant petition in this Court in June 1993, and we issued the order to show cause on June 25. On that same date, the District Court granted Garrett's motion to stay the proceedings there in order to permit him first to pursue further his remedies in the military justice system.

### II

To support his claim for extraordinary relief, Garrett challenges the legality of certain voting procedures for findings and sentencing that were followed in his case and, as well, asserts that his appellate defense counsel were ineffective during the usual appellate review of his case for not then pursuing those issues. At the outset, the Government procedurally contests Garrett's right to the designated writ on these bases:

> Since the writ of error *coram nobis* is an ancient common law writ, historically it could not have encompassed ineffective assistance of counsel, which is a comparatively recent development in the law. Furthermore, the voting procedure complained of by petitioner is not a matter regarding the facts of his case, but one of law, and "the writ [of error *coram nobis* ] will not

---

1. *See Dodson v. Zelez,* 917 F.2d 1250 (10th Cir. 1990). Judge Cox in dissent dismisses this petition as "patently frivolous." 39 MJ at 297. We do not agree, however, that ensuring strict compliance with statutory voting procedures, when

deviation from them is clear and apparent on the record, is a frivolous exercise. Neither, apparently, did the panel of the Court of Appeals for the Tenth Circuit in *Dodson.*

lie to correct an error of law." *Bateman v. United States*, 277 F.2d 65, 68 (8th Cir. 1960).

Answer at 6.

■ This objection need not long detain us.

Although seldom used in early cases except to correct factual blunders, *coram nobis* became more popular as courts grew more sensitive to due process violations. Although the Supreme Court, in early descriptions of the writ, spoke to errors of fact, the writ now appears to encompass constitutional and *other fundamental errors* ....

2 S. Childress and M. Davis, *Federal Standards of Review* § 13.01 at 13–2 (2d ed.1992) (footnotes omitted; emphasis added). Garrett's specific claims, *infra*, sound in due process, *see Dodson v. Zelez*, 917 F.2d 1250 (10th Cir.1990), which certainly would appear to be within the scope of modern *coram nobis*.[2]

In any event, since Garrett remains in confinement pursuant to the proceedings which he now challenges, a petition for a writ of habeas corpus surely is available to him. *See Berta v. United States*, 9 MJ 390, 392 (CMA 1980). Accordingly, the Government has no viable procedural objection to this Court's consideration of the merits of Garrett's petition, regardless of the route by which it has reached us.

**2.** Judge Cox in dissent characterizes the petition before us as "an otherwise ordinary petition for review ...," 39 MJ at 297, which involves an issue that petitioner did not raise in this Court during normal appellate review and which is substantially out of time. Though not raised by petitioner in his statutory appeal in 1986, *see* Art. 67(b)(1), Uniform Code of Military Justice, 10 USC § 867(b)(1) [renumbered (a)(1) in 1989], the last section of this Court's opinion resolving that appeal discussed this issue at some length but ultimately decided that it did not have to resolve the question in light of appellant's not assigning it as error. 24 MJ 413, 418–19 (1987). It was not until after his co-actor Dodson had successfully pursued collateral relief in the Court of Appeals in 1990 that petitioner had any reason to believe that the issue could and should still be pressed. He did so promptly at that point by filing a petition for a writ of habeas corpus in the

## III

### A

■ First, Garrett complains of the denial of his motion at the rehearing that would have required a vote of three-fourths of the members to convict him of felony-murder. He acknowledges that Article 52(a)(2), UCMJ, 10 USC § 852(a)(2), requires only a two-thirds vote to convict for any offense except where death is by law a mandatory punishment, which does not include felony-murder, *see* Art. 118. Nonetheless, he argues that, because life imprisonment is a *mandatory*[3] sentence for felony-murder, *see* Art. 118, and because Article 52(b)(2) requires a three-fourths vote to impose a sentence to life imprisonment, then logically a three-fourths vote is needed to *convict*, as well.

This focus on a supposed anomaly within Article 52 is not of recent vintage. As early as 1957, in *United States v. Walker*, 7 USC-MA 669, 23 CMR 133, this Court extensively addressed the issue raised by Garrett here and rebuffed it as inconsistent with the clear and unambiguous language of the statute. Over 30 years later, we were of the same view in *United States v. Schroeder*, 27 MJ 87, 90–91 (CMA 1988), *cert. denied*, 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989). Pointing to the "clear" language of Article 52, the Court opined:

U.S. District Court in Kansas and, while that was pending, filing the instant writ in this Court.

We are unaware that there are time limits for petitioning for a writ of error *coram nobis*. *Cf.* Rule 19(d), Rules of Practice and Procedure, U.S. Court of Military Appeals. Indeed, given its nature as a writ that normally is pursued only when other usual remedies have expired, *see* S. Childress and M. Davis, *Federal Standards of Review* § 13.01 at 13–3 to 13–5 (2d ed.1992), the vintage of this petition is not particularly noteworthy. Further, in view of the history of this case just recited, this petition would not seem to be "an otherwise ordinary petition for review...."

**3.** Although Article 118(4), UCMJ, 10 USC § 918(4), authorizes the death penalty for felony-murder, death was not an available punishment at Garrett's first court-martial because his charges had been referred as non-capital, *see* Art. 18, UCMJ, 10 USC § 818, and 24 MJ at 418.

We perceive nothing arbitrary or irrational in this arrangement. As we noted in *Walker*, the "acts of voting" on findings and sentence are "separate and distinct," *see* 7 USCMA at 647, 23 CMR at 138.... 27 MJ at 91.

Therefore, we find no reason or basis in law upon which to grant Garrett's petition for extraordinary relief from the denied instruction on the required vote to convict him of felony-murder.

### B

■ Garrett's next complaint involves instructions given prior to the sentencing deliberations.[4] First, he asserts that the military judge erred when he instructed the members that they *need not vote* on the confinement-for-life portion of the sentence, since it was a mandatory component of the sentence. Garrett is correct. *United States v. Schroeder, supra* at 88–90.

As clear as is Article 52(b)(2) that a three-fourths vote of the members is required to adjudge a sentence to life imprisonment, equally clear is its lack of any exceptions whatsoever to that voting requirement. It would have been easy enough for Congress to have absolved members from that responsibility where confinement for life was mandatory, but it did not. *Accord* RCM 1006(d)(3)(A), Manual for Courts–Martial, United States, 1984 ("All members shall vote on each proposed sentence in its entirety....."); RCM 1006(d)(4)(B) ("A sentence which includes confinement for life or more than 10 years may be adjudged only if at least three-fourths of the members present vote for that sentence."); RCM 1006(d)(5) ("When a mandatory minimum is prescribed under Article 118 the members shall vote on

a sentence in accordance with this rule."). *See also* para. 76*b*(2), Manual for Courts–Martial, United States, 1969 (Revised edition) ("Any sentence, even in a case where the punishment is mandatory, must have the concurrence of the required number of members.").

■ Of course, it logically may be argued that Garrett suffered no prejudice from this error, *see* Art. 59(a), UCMJ, 10 USC § 859(a). After all, the military judge instead lawfully could have instructed the members that any sentence upon which they voted *must* include confinement for life. *United States v. Schroeder, supra* at 90. Furthermore, any sentence that did not include the mandatory life imprisonment would have been unlawful and could have been remedied by means of a sentence rehearing ordered by the convening authority. *Id.* at 90.

We do not need to resolve this question of prejudice, however, because this error in turn led the military judge to commit another, related instructional error from which we cannot fairly conclude that Garrett suffered no prejudice. Since, in the judge's view, the members did not have to vote at all on the confinement portion of the sentence, he ruled that the adjudged sentence required only a vote of two-thirds of the members, not three-fourths. This was error. The members must vote on proposed sentences *in their entirety*, RCM 1006(d)(3)(A), and a mandatory component of proposed sentences in this case was confinement for life. Unambiguously and unconditionally, Article 52(b)(2) and RCM 1006(d)(4)(B) compel that such a sentence be imposed only by a three-fourths vote. *Cf. United States v. Schroeder, supra.*

---

4. In his *pro se* petition, Garrett submits in raising this claim that "it is unnecessary to argue [it], since that issue has been decided [in his favor] by the Tenth Circuit Court of Appeals, *Dodson v. Zelez,* 917 F.2d 1250 (10th Cir.1990)." Indeed, following an analysis much like ours and relying on similar precedent from this Court as we do here, *infra,* the court in *Dodson* did reach the same conclusions as we do today. *Id.* at 1256–62. It should be clear, however, that it is our own analysis of the issues that has led us to our decision and that, as the Government retorts, this

Court is not bound by the decision in *Dodson.* This appellate court of the United States is as capable as is a Court of Appeals of the United States of analyzing and resolving issues of Constitutional and statutory interpretation. In fact, to the extent that an issue involves interpretation and application of the Uniform Code of Military Justice and the Manual for Courts–Martial in the sometimes unique context of the military environment, this Court may be better suited to the task.

■ At both the original proceedings and at the rehearing, the members returned a sentence while announcing that it was with "two-thirds of the members concurring." At the former, that would have been 7 out of 10 members, and at the latter it would have been 6 out of 9. Each time, a correct vote of three-fourths would have required concurrence of one additional member. There is no way to tell, short of sheer speculation, whether three-fourths of the members would have returned the same sentence returned by the two-thirds—a sentence that maximized *all* elements of the sentence to which Garrett was exposed: not only the mandatory life imprisonment but also a dishonorable discharge, total forfeitures, and reduction to the lowest enlisted grade.

Additionally, as to each of these instructional errors that preceded deliberation on sentence, there is no way to tell, short of sheer speculation, whether—when faced with the necessity for three-fourths of the members to affirmatively cast their votes on a sentence that included confinement for life—the members would have returned to the courtroom for instructions on how to reconsider their findings of guilty that put them into that quandary. *See* RCM 924(a) ("Members may reconsider any finding of guilty reached by them at any time before announcement of the sentence."). A rehearing on sentence will permit Garrett to be sentenced under correct instructions both as to the responsibility of the members to vote on sentence proposals in their entirety, including the mandatory aspect of the sentence, and as to the required percentage of concurrence on the total sentence.

IV

The petition for extraordinary relief is granted as to sentence. The decision of this Court (24 MJ at 419) as to sentence is vacated, and the decision of the United States Navy–Marine Corps Court of Military Review on rehearing (dated January 25, 1985) as to sentence is reversed. The sentence is set aside. A rehearing on sentence may be ordered.[5]

Chief Judge SULLIVAN and Judge CRAWFORD concur.

COX, Judge (dissenting):

I would dismiss this petition as untimely. Petitioner essentially advances an otherwise ordinary petition for review of an instructional matter that occurred on the record, in open court, at his court-martial rehearing *over 10 years ago*. He did not raise the issue before this Court when we resolved his appeal *over 6 years ago*. 24 MJ 413, 419 (1987).

Our rules in effect at the time of that decision specified that petitions for reconsideration of decisions of this Court "be filed no later than 10 days after the date of any order, decision, or opinion by the Court." Rule 31(a), Rules of Practice and Procedure (effective July 1, 1983), 15 MJ CXLIII. I conclude that the petition herein is untimely.

I would not necessarily stand on form, however, if this petition was not so patently frivolous. He was convicted by a panel of Marine officers and enlisted members for his role in attempting to rob, and murdering, a fellow Marine. Inasmuch as a death penalty was not adjudged,* petitioner's sentence to life imprisonment was mandated by the overriding act of Congress. Art. 118(4), Uniform Code of Military Justice, 10 USC § 918(4). In my view, the chances that three-fourths of the court members then sitting might not have adjudged a dishonorable discharge, reduction to E-1, and total forfeitures are sufficiently infinitesimal as to not warrant the

---

5. Since we have reached and resolved the substance of Garrett's complaints, we do not need to address his claim that his appellate counsel rendered him ineffective assistance by not raising these same complaints during the usual course of appellate review.

* The papers submitted in conjunction with this petition do not indicate whether the convening authority referred the charges to the original court-martial as a capital case. The life sentence imposed in the first trial precluded referral of the rehearing as a capital case, absent additional charges alleging a capital offense. RCM 810(d)(1), Manual for Courts-Martial, United States, 1984.

wholesale abrogation of finality of courts-martial. *See* Art. 76, UCMJ, 10 USC § 876.

Moreover, after establishing the voting percentages required for death and life imprisonment in Article 52(b)(1) and (2), UCMJ, 10 USC § 852(b)(1) and (2), Congress specified:

> All other sentences shall be determined by the concurrence of two-thirds of the members present at the time the vote is taken.

Art. 52(b)(3). It is not obvious to me that the various Manual and judicial attempts to revise the plain language of this statute are not *ultra vires.* If so, the military judge's instructions with respect to these challenged sentence elements would have been correct.

Accordingly, I dissent.

GIERKE, Judge (dissenting):

I am persuaded by the majority's reasoning that we ought to consider the petition on its merits, notwithstanding petitioner's failure to raise the issue during the ordinary course of appellate review. I part company with the majority, however, on the question whether petitioner is entitled to relief.

Article 59(a), Uniform Code of Military Justice, 10 USC § 859(a), provides that "[a] finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." In this case petitioner's crimes carried a mandatory penalty of life imprisonment. Art. 118(4), UCMJ, 10 USC § 918(4); para.

43e(1), Part IV, Manual for Courts-Martial, United States, 1984. He had no right to any lesser term of confinement. Regardless of instructional errors, no court-martial could have lawfully sentenced petitioner to a lesser term. If we order a sentence rehearing, the court-martial may not lawfully sentence petitioner to less than life imprisonment. *United States v. Schroeder,* 27 MJ 87, 90 (CMA 1988), *cert. denied,* 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989).

The majority appears to rely on the possibility that the court-martial might not have imposed a dishonorable discharge or total forfeitures. In my view, the chances of that occurring are infinitesimal. Petitioner and two other Marines conspired to rob a fellow Marine. Their first attempt was unsuccessful. Later in the evening they encountered the same victim. They repeatedly stabbed and beat the victim and then robbed him of "a substantial amount of cash." When the victim was found, "[h]e had abrasions around his right eye, nose and temple, and nonfatal stab wounds to his chest and below his left ear." He died of a stab wound in the back. 16 MJ 941, 942 (NMCMR 1983). It takes an imagination much more creative than mine to envision a court-martial, confronted with the above facts, that would sentence an accused to life imprisonment for attempted robbery, conspiracy to commit robbery, and felony-murder, but would not impose a punitive discharge or total forfeitures.

In my view petitioner has not demonstrated anything close to a possibility of prejudice. Accordingly, I dissent.