UNITED STATES, Appellee

v.

Juan R. GONZALEZ, Hospital Corpsman First Class, U.S. Navy, Appellant.

No. 93–0343.

CMR 88 4472.

U.S. Court of Military Appeals.

Argued March 17, 1994.

Decided June 23, 1994.

For Appellant: *Lieutenant Philip L. Sundel*, JAGC, USNR (argued); *Ruth G. Finn* (on brief).

For Appellant: *Captain A. Diaz*, USMC (argued); *Colonel T.G. Hess*, USMC, *Commander S.A. Stallings*, JAGC, USN, *Major Laura L. Scudder*, USMC (on brief).

*Opinion of the Court*

CRAWFORD, Judge:

◼ Appellant was found guilty of premeditated murder,[1] in violation of Article 118, Uniform Code of Military Justice, 10 USC § 918, and sentenced to a dishonorable discharge, confinement for life,[2] total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved the sentence. The Court of Military Review affirmed the findings and sentence. We granted review on the following issue:

WHETHER THE NAVY–MARINE CORPS COURT OF MILITARY REVIEW MISAPPLIED THE *GARRIES* TEST WHEN IT HELD THAT THE MILITARY JUDGE CORRECTLY DENIED APPELLANT'S REQUEST FOR AN INDEPENDENT INVESTIGATOR.

---

1. The GCMO (No. 4–88) erroneously states the offense as unpremeditated murder.

2. The military judge instructed that "the required concurrence ... is two-thirds or six members for any sentence other than the sentence to death." (R. 1724.) He later instructed that "[i]f reconsideration is required you must adhere to all of my original sentencing instructions to include the two-thirds concurrence required for a sentence other than death...." (R. 1734.) In *Garrett v. Lowe*, 39 MJ 293 (1994), we held that a three-fourths vote is required in order to impose the life sentence, even though it is mandatory. Accordingly, the above-quoted instructions were erroneous. However, there were eight members voting (R. 1734), and two-thirds or three-fourths of that number would be six. Since the judge specifically told the members that six of them had to concur in "any sentence other than the sentence to death," there is no possibility of prejudice. Art. 59(a), Uniform Code of Military Justice, 10 USC § 859(a).

We hold the Court of Military Review did not misapply *United States v. Garries*, 22 MJ 288 (CMA), *cert. denied*, 479 U.S. 985, 107 S.Ct. 575, 93 L.Ed.2d 578 (1986), in holding that appellant had not established the necessity for appointment of an independent Naval Investigative Service investigator.

## FACTS

Four days after appellant's wife's disappearance, her nude and partially decomposed body was found in a drainage ditch in Spain. She had two puncture wounds in the chest and severe bruises on the left side of her face.

An autopsy revealed that she had died of two chest wounds from a high velocity projectile, such as a crossbow. These wounds were inflicted after she had been knocked unconscious. At trial, defense counsel requested investigative assistance for the following: To explore defense theories surrounding the death of appellant's wife and to go into the Spanish community where the victim was found because trial defense counsel could not speak Spanish. The defense theory was that the victim had been involved with the Spanish criminal drug element and had been robbed and killed by those criminals. The toxicology reports on the victim indicated a presence of significant quantities of codeine and cocaine in her system; no jewelry, money, or passport were found on her person, though appellant was the only source of information that she had such items with her when she left their home. CMR unpub. op. at 3.

The questions the investigator would explore were as follows: First, whether the victim was seen after the time the Government claimed she died; second, who supplied the significant quantity of codeine and cocaine found in the victim's body; third, who was with her when she ingested the codine and cocaine; fourth, whether any of the

Spanish Nationals who frequented the bars where the victim was known to be a regular had knowledge of her murder, robbery, or drug usage; and fifth, whether there was any connection between the crossbow arrows which allegedly killed the victim and the sporting goods shop where the victim went with her lover looking for crossbow arrows. Final Brief at 9–11.

The military judge denied the defense motion. He concluded that the defense sought "a broad generalized investigation" without any indication that particular evidence existed; therefore, the defense had not shown "necessity" for the requested assistance. At the same time, he recognized the practical difficulties facing the defense in seeking to develop its theory: Defense counsel lacked investigative training and expertise and could not speak Spanish. Accordingly, he provided the defense with an interpreter under an "order of confidentiality," and it was clearly understood by all that the defense "would be re-petitioning the court" for an independent investigator if the defense were to "discover certain information or evidence" that would show necessity for such assistance.

Evidence of appellant's guilt was very strong. On the same day his wife turned up missing, his girlfriend was seen wearing a ring earlier worn by his wife. Additionally, appellant had made a number of inculpatory statements.[3]

## DISCUSSION

In *United States v. Garries, supra,* this Court held that, upon a showing of necessity for services, the accused is entitled to employment of an expert. The Court cited *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), and RCM 703(d), Manual for Courts–Martial, United States, 1984. We have not drawn a distinction between a government or non-government in-

3. As the Court of Military Review stated:
   Some of appellant's inculpatory statements include: telling another sailor that a crossbow was missing from his home prior to his wife's body being discovered; when told his wife died of puncture wounds, stating that he knew something like this would happen when his

wife and Yuri took the crossbow; telling another sailor that she (his wife) died quickly, that using a crossbow at 4 feet the arrow would not go through her, that they couldn't get him without the crossbow, and that he had to do it because his wife was leaving him.
Unpub. op. at 2 n. 4.

vestigator or expert. *United States v. Robinson,* 39 MJ 88 (CMA 1994) (accused did not satisfy *Garries* test in requesting an expert to perform secretor tests); *United States v. Burnette,* 29 MJ 473 (CMA) (military judge did not abuse discretion when refusing to order the Government to provide requested civilian experts—accused specifically rejected assistance of any government experts), *cert. denied,* 498 U.S. 821, 111 S.Ct. 70, 112 L.Ed.2d 43 (1990); *United States v. Toledo,* 25 MJ 270 (CMA 1987) (accused has no right to a specific government expert), *cert. denied,* 488 U.S. 889, 109 S.Ct. 220, 102 L.Ed.2d 211 (1989). *Cf. Half–Acre v. Chambers,* 5 MJ 1099 (CMA 1976) (ordered government transportation for defense counsel to conduct investigation). In applying *Garries* the Court of Military Review applied the three-step procedure set forth in *United States v. Allen,* 31 MJ 572, 623 (NMCMR 1990), *aff'd,* 33 MJ 209 (CMA 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1473, 117 L.Ed.2d 617 (1992), as follows:

> There are three aspects to showing necessity. First, why the expert assistance is needed. Second, what would the expert assistance accomplish for the accused. Third, why is the defense counsel unable to gather and present the evidence that the expert assistant would be able to develop.

As we said earlier (at *(460)* ), one of the main concerns raised by the defense was that both defense counsel were not trained investigators and did not speak Spanish. The judge resolved this by ordering that an interpreter be provided to the defense under an order of confidentially. This interpreter could have been used to interview several potential witnesses, including the man who discovered the body, the Spanish authorities present at the scene, and the employees at the bar where the victim had been seen drinking prior to her disappearance. However, there is no indication that the defense ever used the interpreter for any of these reasons. The Court of Military Review noted that "they certainly did not use the interpreter to interview anyone in the Spanish community in an attempt to lay a foundation to renew the request for an investigator." Unpub. op. at 4.

In essence, the defense was given the tools potentially to gather evidence to lay a foundation for the necessity of an independent investigator. *See United States v. Kelly,* 39 MJ 235 (CMA 1994). However, not only did the defense not renew its motion based upon the evidence counsel had discovered, but they also did not effectively use the interpreter to build its case for an independent investigator.

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges COX, GIERKE, and WISS concur.