EFFRON, Chief Judge,
with whom BAKER, Judge, joins (dissenting):
Appellant made a specific request for expert assistance necessary for his defense on a central issue in a closely contested case. The military judge erred in denying the defense the equal opportunity to obtain evidence and witnesses guaranteed by Article 46 of the Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 846 (2006). For the reasons set forth below, I respectfully dissent from the majority opinion’s decision to affirm the findings and sentence.
The charges against Appellant arose from a barroom altercation. During the evening of the incident, Appellant’s civilian acquaintance, Stafford Joseph James Jr., initiated the altercation by confronting Airman Janee about a perceived insult. The confrontation degenerated into a fight between James and Janee. Airman Gee joined Airman Janee in the fight with James.
Up to that point, Appellant had not been involved in the altercation. Eventually Appellant walked toward the fighters, and was intercepted by Airman Soto, who threw Appellant to the floor, and a fight ensued. All the fighters were in close proximity.
After a brief period, roughly fifteen seconds, the bar’s bouncers broke up the fight. Appellant and James left through one door, while Airmen Janee, Gee, and Soto left through a separate door. Outside the bar, the three airmen noticed that they had been stabbed.
Who inflicted the wounds on the three Airmen? Was it Appellant, or was it his civilian acquaintance, Stafford Joseph James? The three victims stated that they did not feel stab wounds during the fight, and they had not seen a knife during the fight. None of the witnesses to the incident saw a knife, and no knife has been recovered. Only one of the three — Airman Soto — recalled being touched by Appellant. Two of the three— Airman Janee and Airman Gee — recalled fighting with James, but did not recall seeing Appellant. A person who witnessed the fight recalled seeing an individual wearing the same attire as James making stabbing motions toward Airman Janee during the fight.
Stafford Joseph James, the person who initiated the altercation, became the primary source of evidence against Appellant. When James heard on the news that the local police were looking for suspects in the incident, James called the police department to report that Appellant was the perpetrator. According to James, Appellant told James about the stabbings after the incident. The police obtained a shirt that James identified as having been worn by Appellant during the fight. A subsequent DNA analysis of the shirt provided by James identified a match to Airman Jance’s blood. James stated that his own shirt was “fairly saturated” with blood, but that he threw it away, and it was never tested for a DNA match with the victims’ blood. James also provided the police with a pair of pants, stating that he wore the pants during the fight. Subsequent testing identified a single spot of blood on the pants, but the blood did not match the DNA of any of the victims. Later, James would testify at trial that his pants were soaked in blood through to his boxers, which raised questions at trial as to whether the pants he provided to the police, with the single spot of blood, *102 were in fact the pants that he wore during the fight.
The investigation led to charges that Appellant had stabbed the three Airmen with a knife. From the outset, the defense sought expert assistance to address the central question raised by the charges — who inflicted the knife wounds? In the military justice system, the prosecution and the defense “shall have equal opportunity to obtain witnesses and evidence.” Rule for Courts-Martial (R.C.M.) 703(a); see Article 46, UCMJ. Prior to trial, the defense counsel asked the convening authority to appoint a blood spatter expert to provide assistance to the defense. See R.C.M. 703(d). The convening authority denied the request.
At trial, the defense moved that the military judge approve the appointment of a blood spatter expert to assist the defense. The defense motion noted that the Government planned to present the results of DNA testing to show the genetic identity of blood on Appellant’s shirt. The defense emphasized the difference between identification of genetic identity and explanation of the cause of blood spattering on the shirt:
DNA analysis can only confirm that genetic makeup of physical evidence, not how it came to be on the evidence seized .... [T]he defense is free to explore theories of the case that the government may not be pursuing ... [and] explor[e] all possibilities as to how the blood came to be on the shirt that SrA Lloyd [Appellant] was wearing at the time of the altercation.
The defense explained why the DNA expert provided by the Government would not suffice with respect to identifying the circumstances that led to the bloodstain on Appellant’s shirt:
There are no witnesses in this case who can testify to seeing SrA Lloyd stab anyone. The case hinges upon an alleged confession to an interested party and on blood evidence on SrA Lloyd’s clothing. The [DNA] consultant currently provided to the defense is not qualified to provide information or testify as to bloodstain patterns.
The defense also explained the specific, highly relevant analysis that could be provided by a blood spatter expert:
[T]he defense must understand and potentially present expert testimony on the manner in which blood spatters from a stab wound.... [B]Iood may spatter a significant distance from a stab wound.... To mount an effective defense, the defense must understand the physics of bloodstain patterns to either rule out or present such a theory.
The military judge denied the motion, concluding that the defense had shown only a “mere possibility” that an expert would provide meaningful assistance, which fell short of the requirement to show a “reasonable probability” of necessity under United States v. Gonzalez, 39 M.J. 459, 461 (C.M.A.1994). United States v. Bresnahan, 62 M.J. 137, 143 (C.A.A.F.2005). The case then proceeded to trial. The defense presented the theory that the bloodstain on the shirt did not prove that Appellant caused the bleeding, but was forced to do so without expert testimony regarding the potential reasons for the blood spatter on his shirt.
The majority opinion would affirm on the ground that the defense motion established only a “mere possibility” that an expert was necessary. United States v. Lloyd, 69 M.J. at 99 (C.A.A.F.2010). I respectfully disagree. The defense’s motion explained the need for an expert in clear and compelling terms: (1) no witnesses saw the Appellant stab anyone; (2) the primary evidence against Appellant consisted of statements by a person, Stafford Joseph James, interested in the outcome of the investigation; (3) the expected DNA testimony, and the DNA expert provided to the defense, could only establish the genetic source of the bloodstain on Appellant’s shirt and could not explain the physics of what may have caused the blood to spatter on the shirt; and (4) expert assistance would enable the defense to determine whether expert testimony would be available to explain that the bloodstain could have been caused by a wound producing a spatter emanating a significant distance from Appellant’s location in the altercation. The facts proffered in the defense motion demonstrat *103 ed that a “reasonable probability exist[ed] ‘both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial.’ ” Bresnahan, 62 M.J. at 143 (quoting Gunkle, 55 M.J. at 26, 31 (C.A.A.F.2001)).
Who stabbed the three airmen? No one saw any stabbing. No one saw a knife. None of the victims felt any stabbing during the altercation. Was it Stafford Joseph James, the person who started the altercation, fought with two of the victims, destroyed his own blood-soaked shirt before it could be tested, whose pants did not match his previous testimony and had no blood from the altercation on him, did nothing to report the incident until he heard about the police investigation, and then immediately placed the blame on Appellant? Or was it Appellant, who belatedly entered the altercation, was identified as being in a fight with only one victim, and whose admissions were attributable to Stafford Joseph James?
The responsibility for sorting out the facts rested with the court-martial panel. The opportunity to present evidence raising reasonable doubt about the Government’s ease rested with the defense. The opportunity for the defense to determine whether such evidence exists in the form of expert testimony is guaranteed by Article 46, UCMJ, and R.C.M. 703. In this case, the convening authority erred in denying Appellant the opportunity to obtain such assistance, and the military judge erred in denying the defense motion for such assistance. As a result, the defense was compelled to rely on arguments by counsel drawing inferences from lay testimony without the benefit of scientific evidence regarding the blood spatter patterns. In a close ease, the defense was denied the opportunity to explore the potential for expert testimony on the critical issue of guilt or innocence. See Gunkle, 55 M.J. at 32. I would set aside the findings and sentence and order further proceedings to ascertain whether Appellant was prejudiced by the failure to provide the requisite expert assistance. See United States v. McAllister, 55 M.J. 270, 276 (C.A.A.F.2001).