**UNITED STATES COAST GUARD COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**John C. RIESBECK**
**Boatswain's Mate Second Class (E-5), U.S. Coast Guard**

**CGCMG 0291**
**Docket No. 1374**

**5 August 2014**

General Court-Martial convened by Commander, Coast Guard Pacific Area. Tried at Alameda, California, and Seattle, Washington, on 4 April 2012, 23-24 May 2012, and 12-16 June 2012.

| | |
|---|---|
| Military Judge: | CAPT Michael E. Tousley, USCG |
| Trial Counsel: | LT Luke R. Petersen, USCG |
| Assistant Trial Counsel: | LT Bryan R. Blackmore, USCG |
| Military Defense Counsel: | LT Jennifer L. Pollio, JAGC, USN |
| Civilian Defense Counsel: | Mr. Stephen H. Carpenter, Esq. |
| Appellate Defense Counsel: | LT Jonathan C. Perry, USCGR |
| Appellate Government Counsel: | LT Frances S. Johnson-Gillion, USCGR |

**BEFORE**
**McCLELLAND, LUCE & CLEMENS**
Appellate Military Judges

McCLELLAND, Chief Judge:

Appellant was tried by general court-martial composed of officer and enlisted members. Contrary to his pleas, Appellant was convicted of two specifications of making a false official statement, in violation of Article 107, Uniform Code of Military Justice (UCMJ); one specification of rape, in violation of Article 120, UCMJ; and one specification of orally communicating indecent language, in violation of Article 134, UCMJ. The court sentenced Appellant to confinement for three months, reduction to E-2, and a bad-conduct discharge. The Convening Authority approved the sentence.

Before this court, Appellant has assigned the following errors:

I.     The military judge erred in denying Appellant's motion to compel funding for defense counsel and a paralegal to travel to and investigate the scene of the alleged rape in Puerto Vallarta, Mexico.

II.    The improper "court packing" of females and victim advocates in Appellant's members panel deprived Appellant of his constitutional right to an impartial panel.

III.   If the issue of improper selection was waived, Appellant received ineffective assistance of counsel at trial.

IV.    The military judge's admission of prosecution exhibit 9, SN KMS's journal entry, as admissible non-hearsay constitutes reversible error.

V.     The failure of the staff judge advocate's recommendation to comment on the allegations of legal error raised by trial defense counsel in clemency was plain error.

VI.    The forwarding of charges and post-trial advice in Appellant's court-martial were tainted by unlawful command influence.

VII.   Appellant's convictions and sentence should be reversed based on the cumulative effect of errors in Appellant's court-martial.

We summarily reject the sixth issue; we see no evidence of unlawful command influence in this case. Nor do we see any impropriety in the roles of the deputy staff judge advocate and staff judge advocate and in the trial counsel's actions with respect to Appellant's command. We discuss the other issues and affirm.

**Summary of facts**

Appellant was charged with forcible rape of Seaman S in Puerto Vallarta, Mexico. Both were crewmembers in USCGC MIDGETT (WHEC-726). Both were staying in a hotel, in separate rooms, during a September 2010 port call in Puerto Vallarta. Both spent much of their time at the hotel swimming pool and drinking alcohol. The incident took place during the night in Appellant's hotel room, after both had consumed a large quantity of alcohol. Seaman S reported the incident to Coast Guard Investigative Service (CGIS) on 18 April 2011. (R. June 13 at 54, 104.)

**Investigative trip**

Appellant complains that the military judge's denial of the defense request to examine the scene of the alleged crime violated his right to present a defense, and claims that the evidence sought was of such central importance that it was essential to a fair trial.

Before trial, the defense requested funding for counsel and a paralegal to travel to Puerto Vallarta, which was denied by the Convening Authority.[1]  (R. May 23 at 118; Appellate Ex. XVIII.)  At a pretrial Article 39(a) session, the defense raised the issue, described by the military judge as a "motion to compel Government funding of your investigatory trip."  (R. May 24 at 4.)  Specific items to be investigated included thickness of the hotel room walls, because the complainant had testified at the Article 32 investigation that during the incident she screamed for fifteen to twenty minutes; the route from the swimming pool to the hotel room; whether there were video cameras; traffic through the halls.  (R. May 23 at 120-24.)  The military judge denied the motion, declaring, "I'm not convinced that the failure to allow for this investigatory trip would result in a fundamentally unfair trial."  (R. May 24 at 5.)

Counsel for the United States and Appellant have framed the issue in terms of the right to investigative assistance or the right to access to evidence respectively.  Servicemembers are entitled to investigative or other expert assistance when necessary for an adequate defense. *United States v. Garries*, 22 M.J. 288, 290 (C.M.A. 1986).  Necessity requires more than the mere possibility of assistance; the defense must show that a reasonable probability exists that the requested assister would be of assistance to the defense and that denial of assistance would result in a fundamentally unfair trial. *United States v. Bresnahan*, 62 M.J. 137, 143 (C.A.A.F. 2005) (citing *United States v. Gunkle*, 55 M.J. 26, 31 (C.M.A. 1994)).  "The defense must show: (1) why the . . . assistance is needed; (2) what the . . . assistance would accomplish for the accused; and (3) why the defense counsel were unable to gather and present the evidence" without the assistance. *Id.* (citing *United States v. Gonzalez*, 39 M.J. 459, 461 (C.M.A. 1994)).  A military judge's ruling on a request for assistance will not be overturned absent an abuse of discretion. *Id.* (citing *Gunkle*, 55 M.J. at 32).  Somewhat similarly, servicemembers are "entitled to the

---

[1] It appears that funding for counsel was already available, hence the denial covered only the paralegal.  Counsel sought funding for the paralegal so that any relevant testimony could be provided by a witness other than the

production of evidence which is relevant and necessary." R.C.M. 703(f)(1). Relevant evidence is necessary when it is not cumulative and when it would contribute to a party's presentation of the case in some positive way on a matter in issue. *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004) (quoting R.C.M. 703(f)(1) Discussion). *See also* R.C.M. 703(f)(2) (if unavailable evidence is of such central importance to an issue that it is essential to a fair trial, the military judge shall abate the proceedings). A ruling on a request for production of evidence is reviewed for abuse of discretion. *Rodriguez*, 60 M.J. at 246.

On the subject of wall thickness, a witness testified that his hotel room was right next to Appellant's; he saw Appellant and Seaman S walking toward Appellant's hotel room, both wearing swimsuits, as he was entering his own room; he never heard any screaming, and he did not know how thick the walls were, but he thought if somebody was screaming he would have heard it. (R. June 13 at 173-75.) The only contrary evidence was Seaman S's testimony that one could not hear doors slamming outside one's room or people walking through the halls. (R. June 14 at 115-116.) Given this existing evidence from witnesses who were present in the hotel when the incident occurred, there was no showing of necessity for new evidence regarding the walls and sound transmission.

Defense justification for the trip in argument to the Trial Judge, beyond wall thickness, lacked specific relevance to the issues at trial. A visit to the hotel to investigate video records and the traffic through the halls would have been unlikely to shed light on conditions at the time of the incident, since the incident occurred in September 2010 and funding for the trip was first requested in May 2012. (Appellate Ex. XVIII.)

We do not see any evidence the defense sought as essential to a fair trial. We conclude the military judge did not abuse his discretion in denying funding for the proposed trip. Further, we are convinced beyond a reasonable doubt that if he erred, the error was harmless.

**Court member selection issue**

Appellant asserts that he was deprived of his right to an impartial panel in that the members included seven women and five victim advocates who were selected to ensure a rape conviction, and that the military judge erred by holding that the issue had been waived.

Rules for Courts-Martial[2] (R.C.M.) 912(b)(1) provides:

> Before [voir dire] begins, or at the next session after a party discovered or could have discovered by the exercise of diligence, the grounds therefor, whichever is earlier, that party may move to stay the proceedings on the ground that members were selected improperly.

The court-martial member questionnaire's first set of blanks calls for the gender of the member; each member of the court duly provided his or her gender. (Appellate Ex. XXVI.) During general voir dire, five female members responded affirmatively to the question of whether they had ever served as a victim advocate. (R. June 12 at 52.) During individual voir dire, those five members and two additional members discussed that they had been trained as a victim advocate or had assisted women who had complained of sexual assault. (R. June 12 at 69, 121, 140, 171, 184, 200.) Two of them, including a man, were eventually excused from the court upon challenge for cause. Hence there were five members seated (all of them women) who had been trained as a victim advocates or who had assisted women who had complained of sexual assault.

After individual voir dire, a recess was taken. (R. June 12 at 213.) At the next session, challenges were asserted. As a preface to asserting challenges, defense counsel noted that the panel consisted of seven women and three men and that five members were or had been victim advocates. (R. June 12 at 213.) He also noted the number of women and men on the panel, and that the numbers had changed from six women and four men to seven women and three men by the latest change to the Convening Order. (R. June 12 at 214.) He went on,

> So whether this leads to anything, I do not know. It's unusual. And to the extent that appellate counsel wishes to gather further evidence and perhaps requesting a

---

[2] Rules for Courts-Martial, Manual for Courts-Martial, United States (2008 ed). The provisions of the Manual for Courts-Martial cited in this opinion are identical in the 2008 and 2012 editions.

new trial, somewhat late – I do not know – but I just want to note that for the record.

(R. June 12 at 214.)

Defense counsel then asserted challenges. After three challenges were granted, the members returned to the courtroom and the members who had been successfully challenged were excused. (R. June 12 at 227.) A recess was taken. (R. June 12 at 228.) At the next session, the military judge gave preliminary instructions to the members, and then the court recessed for the night. (R. June 12 at 242.)

The next morning, at an Article 39(a) session, defense counsel placed on the record what he called newly discovered evidence, the materials that had been provided to the Convening Authority pertaining to amendment of the Convening Order to add enlisted members, including rosters of potential members, both officer and enlisted. (R. June 13 at 6; Appellate Ex. XXXVI.) He asserted that the Convening Authority had "not abided by Article 25," but instead had "decided essentially that the predominate criteria is gender." (R. June 13 at 6-7.) He sought to call witnesses to inquire as to why there were so many women on the panel, and in anticipation of the evidence to be developed thereby, he moved to strike all the female panel members. (R. June 13 at 7.) He acknowledged that the day before he had stated that he did not have a problem with the panel, but he had reconsidered that position. (R. June 13 at 8.)

The military judge denied as untimely the motion to strike the female members from the panel, and denied the request to call witnesses. (R. June 13 at 8-9.)

The defense knew which members were women from the court member questionnaires. After voir dire, the defense knew of the victim advocates. Two sessions of court were held following the session at which voir dire was completed: the session at which challenges were entertained, and the session at which preliminary instructions were given. It was not until the third session following the session at which voir dire was completed that the defense raised the issue of improper selection.

According to R.C.M. 912(b)(1), it appears that the defense should have raised the issue at the session at which challenges were entertained, at the latest.[3]  As already noted, defense counsel did mention at that time the "unusual" fact of seven women and three men on the panel, but limited himself to "not[ing] that for the record."  In our view, this cannot be construed as "mov[ing] to stay the proceedings on the ground that members were selected improperly," in the words of R.C.M. 912(b)(1), or in any way reserving the issue.

We also reject any notion that the "newly discovered evidence," the rosters of potential members, constituted a discovery that triggered a new deadline for raising the issue.  Although these rosters provided the facts about relative numbers of men and women in the pools of potential members, the defense had already noted that the numbers most likely did not reflect the proportions of men and women in the pools ("unusual"); the evidence could have been discovered sooner by the exercise of diligence.

The military judge did not err in denying Appellant's motion as untimely.

Appellant urges that if the issue of improper member selection is found to have been waived, the failure of the defense to timely raise it constitutes ineffective assistance of counsel.

The test for resolving an allegation of ineffective assistance was established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984); *see also United States v. Datavs*, 71 M.J. 420 (C.A.A.F. 2012); *United States v. Molina*, 68 M.J. 532 (C.G.Ct.Crim.App. 2009).

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."

*Strickland*, 466 U.S. at 687.

---

[3] It can be argued that the eventual issue, based on gender rather than status as victims' advocates, should have been raised before voir dire, since the members' gender was known by that time.

Assuming the defense made an error, we do not believe it can be said that either prong of the test is met. Appellant did not receive ineffective assistance.

### Complainant's journal entry

Appellant contends that the military judge erred in finding that the complainant's journal was admissible non-hearsay as a prior consistent statement when the journal entry was written after the motive to fabricate arose. According to Military Rules of Evidence 801(d)(1)(B), a prior statement by a witness at the trial that is consistent with the witness's testimony and offered to rebut an express or implied charge against the witness of recent fabrication or improper influence or motive is not hearsay. A military judge's decision to admit or exclude evidence is reviewed for abuse of discretion. *United States v. Allison*, 49 M.J. 54, 57 (C.A.A.F. 1998).

The complainant, Seaman S, testified that one of the ways she tried to deal with the rape by Appellant to which she had testified was by writing about it in her journal. (R. June 14 at 38.) She did not write in her journal at all for several weeks after it happened, and it was another several weeks later that she wrote about the rape, finally doing so on 4 December 2010. (R. June 14 at 38-39, 60.) She was cross-examined using several quotations from her journal, as well as the absence from the journal of some details to which she had testified. (R. June 14 at 65, 83, 90-91, 119.) Finally, the Government objected to one of the questions about the journal on the basis of best evidence, complaining that defense counsel was "testifying as to the contents of her writing," and asked that the journal entry be admitted before further cross-examination on it. (R. June 14 at 121.) Defense counsel abandoned the line of questioning. (R. June 14 at 122.)

The complainant was asked on cross-examination about a "run-in" with Appellant that occurred in April 2011, where Appellant apparently thought she was "out of line." (R. June 14 at 85.) She testified on re-direct examination that during evening colors, she jokingly told a new crewmember that he would have to relinquish his chosen role to her, whereupon Appellant intervened and affirmed that the new crewmember would retain his role. (R. June 14 at 116.)

Another government witness, Boatswain's Mate Second Class Petty Officer H, testified that he and the complainant became friends aboard MIDGETT, but in compliance with policy,

refrained from having a romantic relationship until after he departed from MIDGETT. (R. June 14 at 125-26.)[4] He testified to various incidents and observations that followed the alleged rape. (R. June 14 at 127-30.) On cross-examination, he testified that CGIS special agents had questioned him about his relationship with the complainant; that he was aware that dating someone stationed aboard the same cutter was against policy and could get both people in trouble; and that it was in April 2011 that he and the complainant decided they needed to cool off their relationship. (R. June 14 at 138-40.)

After the Government's last witness, the Government offered the complainant's journal entry into evidence as a prior consistent statement of the complainant. (R. June 14 at 144.) The defense objected, contending that all the improper motives existed at the time the prior statement was made. (R. June 14 at 144.) The Government identified three putative motives to lie that the defense had raised: the relationship with Petty Officer H, the "run-in" in April 2011, and the possibility of being in trouble with CGIS. (R. June 14 at 145.) All of these, the Government maintained, were recent motives. (R. June 14 at 146.) In response, the defense asserted that the first motive pre-existed the journal entry. (R. June 14 at 147-48.) Defense also questioned whether the journal entry was in fact consistent with her testimony. (R. June 14 at 149-50.) The judge ruled that it was consistent and admitted the evidence. (R. June 14 at 150.) Defense continued to argue, and the judge acknowledged the defense's position that the first motive pre-existed the journal entry, but did not rule on it; he re-affirmed that he was overruling the objection and admitting the evidence. (R. June 14 at 150-51.)

In our view, there was conflicting evidence as to the date the first motive arose. The military judge did not abuse his discretion in admitting the evidence on this account. The second and third motives were not opposed by the defense; it is not clear to what degree, if any, the military judge relied on them since he did not discuss them, but they support his ruling.[5] We also believe that if the military judge erred in admitting the evidence, the error was harmless.

---

[4] The complainant testified to the same effect. (R. June 14 at 42-44.)

[5] Both the second and third motives were argued by the defense on closing, as was the first. (R. June 15 at 37, 38, 40, 41.)

**Cumulative error**

Appellant asserts that the cumulative effect of the errors already discussed along with improper arguments made by trial counsel in rebuttal argument warrants reversal.  Findings should be reversed only if the cumulative errors denied Appellant a fair trial.  *United States v. Pope*, 69 M.J. 328, 335 (C.A.A.F. 2011).

As Appellant points out, it is wrong for trial counsel to characterize a defense as fabricated or an argument as fiction, or to disparage defense counsel by accusations of intentionally omitting unfavorable evidence in aid of spinning a favorable yarn.  *United States v. Fletcher*, 62 M.J. 175, 182 (C.A.A.F. 2005).

However, the parts of trial counsel's argument pointed out by Appellant do not go beyond fair argument.  "Members, there is a lot of double speak and a lot of indignation.  But really what you just heard was a standard defense of misdirection.  Blaming the investigation, blaming the victim, mischaracterize the evidence."  (R. June 15 at 60.)  Trial counsel urged the members to focus on the elements of the offenses instead of "going down the rabbit holes."  (R. June 15 at 65.)  Trial counsel also straightforwardly rebutted defense counsel's arguments about the absence from the Government's case of videotapes, photographs, torn clothing, and testimony by someone other than the victim.  (R. June 15 at 69.)  The argument did not accuse defense counsel of fabrication or other unethical behavior, and did not constitute a personal attack.  We see nothing improper in trial counsel's argument.

We have not identified any errors in this trial.  We certainly see no combination of errors that amount to a denial of a fair trial.

**Failure of SJAR to address allegations of legal error**

Appellant complains that the Staff Judge Advocate (SJA), in advising the Convening Authority, failed to address the allegations of legal error presented by the defense.  R.C.M. 1106(d)(4) requires the SJA to "state whether, in the staff judge advocate's opinion, corrective action on the findings or sentence should be taken when an allegation of legal error is raised in matters submitted under R.C.M. 1105."

The SJA's Recommendation (SJAR) under R.C.M. 1106, dated 10 September 2012 and signed by a Lieutenant Commander as Acting SJA, was received by defense counsel on 12 September 2012, according to a receipt among the ancillary documents. The defense's Request for Clemency dated 14 September 2012, submitted under R.C.M. 1105, requested clemency and also alleged numerous legal errors. Four of these errors are assigned before us. In addition, the defense alleged: (1) BM2 Riesbeck was deprived of key evidence; (2) BM2 Riesbeck's second statement to CGIS should have been suppressed; (3) the evidence of rape was factually insufficient; (4) the officer who signed the SJAR was disqualified because he was a de facto trial counsel.

An Addendum to SJAR, dated 17 September 2012 and signed by the SJA, called the Convening Authority's attention to the request for clemency but did not mention the allegations of legal error.[6]

We have found the issues raised before us to be without merit. We find the other four issues, too, to be without merit.

Generally, failure of the SJA to respond to legal errors raised by the defense requires remand for preparation of a suitable recommendation and new action by the convening authority. *United States v. Welker*, 44 M.J. 85, 88 (C.A.A.F. 1996) (citing *United States v. Hill*, 27 M.J. 293, 296-97 (C.M.A. 1988)). However, if there was actually no error at trial, there is no prejudicial error in the failure of the SJA to respond. *Id.* at 89.

Since we have decided that the allegations of error are without merit, there was no prejudicial error from the SJA's failure to discuss them.

**Decision**

We have reviewed the record in accordance with Article 66, UCMJ. Upon such review, the findings and sentence are determined to be correct in law and fact and, on the basis of the

---

[6] There is nothing in the record to indicate that the Addendum was served on the defense.

entire record, should be approved. Accordingly, the findings of guilty and the sentence, as approved below, are affirmed.

Judges LUCE and CLEMENS concur.



For the Court,

Acting Clerk of the Court