UNITED STATES, Appellee

v.

Joseph W. LEE, Airman
U.S. Air Force, Appellant

No. 03-0071

Crim. App. No. S29894

United States Court of Appeals for the Armed Forces

Argued October 16, 2006

Decided December 27, 2006

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, J., joined.

STUCKY and RYAN, JJ., did not participate.

Counsel

For Appellant:  Captain John N. Page III (argued); Lieutenant
Colonel Mark R. Strickland (on brief).

For Appellee:  Major Matthew Ward, (argued); Colonel Gary F.
Spencer, Lieutenant Colonel Robert V. Combs, and Captain Kimani
R. Eason (on brief); Colonel Gerald R. Bruce.

Military Judge:  James L. Flanary


**This opinion is subject to revision before final publication.**

United States v. Lee, No. 03-0071/AF

Judge ERDMANN delivered the opinion of the court.

Airman Joseph W. Lee was convicted at a contested special court-martial of violating Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000), by possessing one or more images of child pornography in violation of 18 U.S.C. § 2252A (2000). A military judge sentenced Lee to a bad-conduct discharge, confinement for seventy-five days, and reduction to airman basic. The convening authority approved the sentence and the United States Air Force Court of Criminal Appeals affirmed the findings and sentence. United States v. Lee, 57 M.J. 659, 664 (A.F. Ct. Crim. App. 2002).

On January 20, 2004, this court set Lee's conviction aside in light of our decision in United States v. O'Connor, 58 M.J. 450 (C.A.A.F. 2003), and authorized a rehearing. United States v. Lee, 59 M.J. 261 (C.A.A.F. 2004) (summary disposition). At a rehearing before a military judge, Lee was again convicted of possessing child pornography in violation 18 U.S.C. § 2252A. Lee was sentenced to a bad-conduct discharge, confinement for seventy-five days, and reduction to the lowest enlisted grade. Again, the convening authority approved the sentence and the Court of Criminal Appeals affirmed the findings and sentence. United States v. Lee, No. ACM S29894 (A.F. Ct. Crim. App. July 28, 2005). We granted review of a single issue questioning

2

United States v. Lee, No. 03-0071/AF

whether Lee should have been afforded the assistance of an expert consultant to assist in the preparation of his defense.[1]

    In trials by courts-martial, the accused is afforded equal access to witnesses and evidence, including a right to the assistance of necessary experts without regard to his ability to pay for those expert services.  Article 46, UCMJ, 10 U.S.C. § 846 (2000); United States v. Garries, 22 M.J. 288, 290 (C.M.A.), cert. denied, 479 U.S. 985 (1986).  Lee contends that he was wrongly denied the assistance of an expert consultant in forensic computer examination in order to prepare to meet the charge against him and to cross-examine the Government's expert in computer forensics.  Lee argues that an expert consultant was necessary to the defense in order to understand the scientific techniques used to review and analyze computer graphic images and to determine whether such images were real or computer-generated.  We conclude that under the circumstances of this case, Lee was denied his right to expert assistance for the preparation and presentation of his defense.

---

[1] On March 29, 2006, we granted review of the following issue:

    WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION WHEN HE
    DENIED THE DEFENSE REQUEST FOR AN EXPERT CONSULTANT IN
    THE FIELD OF FORENSIC COMPUTER EXAMINATION.

62 M.J. 197 (C.A.A.F. 2006).

## Background

Prior to the rehearing, Lee's defense counsel was provided a Government witness list. Among the listed witnesses was Mr. Michael Buratowski, a forensic expert from the Defense Computer Forensics Laboratory who had prepared a "Media Analysis Report" based upon his examination of graphic images seized from Lee's laptop computer. Mr. Buratowski would offer expert testimony that the images taken from Lee's computer were real photos. After reviewing the report and interviewing Mr. Buratowski, defense counsel requested the employment, at Government expense, of Mr. Marcus Lawson as a confidential expert consultant. In support of this request defense counsel noted:

> 7. Defense interviewed Mr. Burtowski [sic] on 13 Aug 04. During this interview, Mr. Burtowski [sic] stated that the media analysis used to analyze the images is a fairly new process, approximately one year old. He also stated that he had never testified before using this type of picture analysis, that it is not nationally certified, that each forensic lab has different ways of analyzing pictures, and that the picture analysis of this nature is an evolving process.
>
> 8. The defense does not have the necessary qualifications to prepare adequately for this case, especially for evidence provided to the defense a week before trial. The defense requires an expert to analyze the report, do its own analysis of the pictures, analyze the hard drive and help formulate possible defenses.
>
> 9. The world of forensic computer analysis, the underlying science and anything else associated with those subjects, is a very large area of knowledge. It takes someone with specialized knowledge in that field to understand that world, and this expertise is something the defense lacks at this time. Without this knowledge, we cannot adequately assist AB Lee in his defense. Furthermore, we are hamstrung by new forensic

4

> evidence that was provided a week before trial. Without this knowledge, we are forced to take testimony from the government's forensic examiner at face value. We do not have the expertise to cross-examine or otherwise challenge witness testimony or conclusions about the results of this media analysis. This inadequacy will result in a violation of AB Lee's right to present a defense if it is not remedied.

Defense counsel's request indicated that the expert would be of assistance to the defense both in preparing for trial and as a potential expert witness at trial. The Government did not provide an expert consultant to the defense prior to trial.

At trial, Lee's counsel made a motion to compel appointment of an expert consultant. The following discussion between the military judge and defense counsel transpired during the hearing on that motion:

> DC: Your Honor, on 9 August 2004, the defense was presented with a forensic analysis report or, as it is termed on the report, a Media Analysis Report. It was given to the defense approximately a week and a half before trial. The defense had no notice that this report was being given, that it was even being analyzed, and the prosecution is offering it to prove up the charge in Article -- under 18 U.S.C. 2252(a).
>
> The defense has not had an opportunity or the knowledge to adequately prepare for this trial due to our lack of expertise in media analysis. And, I'd like to proffer that the expert witness will say that it is a fairly new technology that has been developed since U.S. v. Ashcroft [sic] to prove that the images are real. The expert witness will opine that these images are real. And, the defense would request an expert, number one, to analyze the report either in forensic computer examination or, more precisely, media analysis. We would request an expert to analyze the report and help us develop any potential cross-examination. And, without an expert to even analyze

5

the veracity of the report, we are burdened at trial. Thank you, Your Honor.

MJ: Okay. Counsel, let me ask you this before I take trial counsel's response to this. You say you found out about the result of the test about a week and a half ago?

DC: Yes, Your Honor.

MJ: And, at that time, did you have access to where you could either talk in person or telephone the government witness involved the case?

DC: We received the contact information for the witness on the 9th, that is the first notice we had of the witness.

MJ: Okay. And, today's the 19th?

DC: Yes, Your Honor.

MJ: So you've had the contact information for about ten days?

DC: Yes, Your Honor.

MJ: And you did, in fact, call and contact this particular witness?

DC: Yes, Your Honor.

MJ: Okay. And did you have a chance to discuss this with him?

DC: Yes, Your Honor.

MJ: And did you -- you did, in fact, conduct an interview with him about the test itself, is that correct?

DC: Yes, Your Honor.

MJ: Okay. And, after that, if you'd have chosen to, did you have access to senior attorneys, other than yourself, in your chain of command to discuss the issue with?

DC: Yes, Your Honor.

MJ:  And, did you, in fact, discuss this issue with them also?

DC:  Yes, Your Honor.

MJ:  Okay.  And did you discuss the analysis techniques that were being used?

DC:  Yes, Your Honor.

MJ:  Okay.  And, other than what you've got in your motion, was there any other defect or any other problem with the testing process other than what you've stated in your motion here?

DC:  There was no, to our knowledge, no defect in the testing process; however, we do not have the expertise to even know if there is a defect.

MJ:  Okay.  Well, when you were talking to the government witness, was he aware of any defects that were in the testing process?

DC:  No, Your Honor.

MJ:  All right.  Did he appear to be confident with the testing results?

DC:  Yes, Your Honor.

MJ:  Okay.  Did he give you anything, at all, other than just the fact that it was a new technique that would make you think that this is an invalid process based on the science of it?

DC:  No, Your Honor.

Government counsel argued that the subject matter did not necessitate a defense expert and that the defense had had adequate time to prepare on the key issue of whether the graphic images were or were not actual.  The military judge denied the defense motion stating:

> [The court finds], by preponderance, that the defense did, in fact, contact the expert, had an opportunity to interrogate him, to ask him specific questions about the programming, about the process, that based upon the proffer given and the questions from the court of the defense, the expert did not know of any glaring -- not glaring -- but any defects in the process or the science that was behind the imaging process, and that there [were] no apparent defects in that process based on the limited evidence received by the court so far.  As a result of that, the court finds that there is no relevant and necessary requirement for an expert based upon this, based upon what the defense has proffered, the court finds, therefore, that the motion for the request is denied.

Mr. Buratowski was recognized as an expert in computer forensic and digital photo analysis and testified at the trial. He demonstrated the qualitative and quantitative analysis examination process for computer images and he discussed relevant concepts and tools such as:  pixilation and randomization of colors within images; the bas relief filter; the glowing edges filter; the sharpen more filter; the solarization filter; and the four channels that make up a digital image (red, green, blue, and luminosity).  Mr. Buratowski related information about his examination of five graphic images taken from Lee's laptop computer as well as his expert opinion that the five images were real as opposed to virtual.

## Discussion

At a court-martial, the parties and the court "shall have equal opportunity to obtain witnesses and other evidence." Article 46, UCMJ.  Prior to trial, the defense must submit a

request for employment of an expert to the convening authority supported, in part, by a "statement of reasons why the employment of the expert is necessary."  Rule for Courts-Martial 703(d).  If the request is denied by the convening authority, that request may be renewed at trial before the military judge. Id.  On appeal, we review the military judge's ruling on a request for expert assistance for abuse of discretion.  United States v. Gunkle, 55 M.J. 26, 32 (C.A.A.F. 2001).

An accused's entitlement to expert assistance is not limited to actual expert testimony at trial.  The entitlement to that expertise is available "before trial to aid in the preparation of his defense upon a demonstration of necessity." United States v. Bresnahan, 62 M.J. 137, 143 (C.A.A.F. 2005); see also United States v. Kreutzer, 61 M.J. 293, 305 (C.A.A.F. 2005).  To demonstrate that necessity, "[t]he accused must show that a reasonable probability exists 'both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial.'" Bresnahan, 62 M.J. at 143 (quoting Gunkle, 55 M.J. at 31).  To test the adequacy of this showing of necessity, we apply a three-part test:  "[t]he defense must show:  (1) why the expert assistance is needed; (2) what the expert assistance would accomplish for the accused; and (3) why the defense counsel were unable to gather and present the evidence that the expert assistance would be able to develop."  Id. (footnotes omitted)

<u>United States v. Lee</u>, No. 03-0071/AF

(citing <u>United States v. Gonzalez</u>, 39 M.J. 459, 461 (C.M.A.

1994); <u>United States v. Ndanyi</u>, 45 M.J. 315, 319 (C.A.A.F.

1996)).  On the facts of this case, we conclude that the defense

made an adequate showing of necessity.

Whether the alleged images of child pornography were real

or virtual was, as defense counsel asserted, a critical issue in

this case.  The Government's witness list revealed that it would

rely on forensic testing and expert testimony to demonstrate

that the images were real.  Defense counsel requested Mr.

Lawson's expertise to assist in reviewing the Government's Media

Analysis Report, to analyze the relatively novel methods used to

generate that report, to conduct an independent analysis of the

images from Lee's computer, and to assist the defense in

preparing to meet Mr. Buratowski's expert testimony.  This

assistance would provide the basis upon which defense counsel

could cross-examine the Government expert and possibly challenge

the actual or real nature of the graphic images.  Defense

counsel demonstrated that this expert assistance was necessary

to defend against key evidence of guilt to be presented by the

Government.

We also agree with the defense counsel's assertion that the

defense did not have the qualifications or expertise to deal

with forensic image analysis as presented by the Government's

expert witness.  Defense counsel's assertion that the scientific

discipline involved was novel, evolving, and varied from lab to

lab is supported by Mr. Buratowski's testimony.  The image analysis process used on the images from Lee's computer was created just over a year before the rehearing.  Mr. Buratowski was one of only three individuals in the Department of Defense qualified to do digital media analysis and even he had not testified in court as an expert in that discipline.  It is not reasonable to expect that defense counsel could learn an entirely new scientific discipline, test the Government's analytical report, and prepare cross-examination, particularly given the very short time before this rehearing was scheduled.

In concluding that the defense met its burden of establishing necessity, we are concerned with the manner in which the military judge responded to this request.  The military judge's questioning of defense counsel reflects that the military judge found that since the defense counsel had the opportunity to discuss the images with the Government's expert, there was no need for a separate defense expert.  Aside from the common-sense conclusion that Mr. Buratowski would be unlikely to cast a critical eye upon his own expertise, his analytical methods, or his professional conclusions, making a selected Government expert available for interview prior to trial does not properly respond to a defense showing of necessity for expert assistance.

In United States v. Warner, 62 M.J. 114, 120 (C.A.A.F. 2005), we commented that "Article 46 is a clear statement of

11

congressional intent against Government exploitation of its opportunity to obtain an expert vastly superior to the defense's."  As this case demonstrates, the playing field at trial is rendered even more uneven when the Government benefits from scientific evidence and expert testimony while the defense is wholly denied a necessary expert to prepare for and respond to the Government's expert.  Denying Lee the expert assistance of a defense consultant was an abuse of discretion.

Before we reverse this case for an abuse of discretion, we must determine that the error materially prejudiced Lee's substantial rights.  Article 59(a), UCMJ, 10 U.S.C. § 859(a) (2000).  In this case, the Government met a critical element of its burden of proof by showing the graphic images to be real through scientific analysis and expert testimony.  Lee, on the other hand, was denied the asset necessary for him to challenge that Government evidence and prepare a defense.  Denying Lee the resources necessary to prepare and present a defense was prejudicial error.

In coming to this conclusion we are cognizant of our recent decision in United States v. Cendejas, 62 M.J. 334 (C.A.A.F. 2006), which was issued after the trial and the Court of Criminal Appeal's decision in this case.  Cendejas also dealt with graphic images of alleged child pornography and we held "that a factfinder can make a determination as to whether actual children were used to produce the images based upon a review of

12

the images alone." Id. at 338. Arguably then, Lee was not prejudiced because the factfinder, in this case the military judge, had before him the graphic images from which he could draw his own conclusion that they were actual. However, in Cendejas we specifically stated that our holding did "not prevent a defendant from having the opportunity to challenge the images on the basis that they do not depict an actual child." Id. Here, the Government clearly relied upon more than just the images themselves and Lee did not have the opportunity to prepare a challenge to the Government's evidence or to the images alone.

We are also aware that the military judge made special findings in which he said that his findings were "bolstered by the testimony of . . . Mr. Buratowski." The military judge further stated: "Finally, upon reviewing the images in Prosecution Exhibits 2 through 5, and applying the court's commonsense, knowledge of human nature and the ways of the world, the court is independently convinced, beyond a reasonable[] doubt[,] that the images are of real children ranging in ages from six to ten years." Nonetheless, we cannot be confident in the fairness of the result of this trial where Lee was deprived of the opportunity to have expert assistance that could have undermined the military judge's conclusion.

Courts-martial must not only be just, they must be perceived as just. The requirement of Article 46, UCMJ, for

equal access to witnesses and evidence secures that just result and enhances the perception of fairness in military justice. Where the Government has found it necessary to grant itself an expert and present expert forensic analysis often involving novel or complex scientific disciplines, fundamental fairness compels the military judge to be vigilant to ensure that an accused is not disadvantaged by a lack of resources and denied necessary expert assistance in the preparation or presentation of his defense.

## Decision

The decision of the United States Air Force Court of Criminal Appeals is reversed and the findings and sentence are set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing may be ordered.