# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
CAMPANELLA, MULLIGAN, and HERRING
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E-2 TIMOTHY J. MURPHY**
**United States Army, Appellant**

ARMY 20130333

Headquarters, 1st Cavalry Division (convened)
Headquarters, 1st Cavalry Division (Rear)(Provisional) (action)
James L. Varley, Military Judge
Lieutenant Colonel R. Tideman Penland, Jr., Staff Judge Advocate (pretrial)
Lieutenant Colonel Michael D. Jones, Acting Staff Judge Advocate (post-trial)


For Appellant: Mr. S. H. Carpenter, Jr., Esquire, (argued); Captain Payum Doroodian, JA; Mr. S.H. Carpenter, Jr., Esquire (on brief and reply brief).

For Appellee: Captain Samuel E. Landes, JA (argued); Colonel Mark H. Sydenham, JA; Major Daniel D. Derner, JA; Captain Samuel E. Landes, JA (on brief).


12 August 2016

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

CAMPANELLA, Senior Judge:

A panel composed of officers and enlisted members, sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of possessing child pornography and one specification of receiving child pornography in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (2012) [hereinafter UCMJ]. The panel sentenced appellant to be discharged with a dishonorable discharge, to be confined for three years, to forfeit all pay and allowances, and to be reduced to the grade of E-1. The convening authority approved only so much of the

adjudged sentence as provided for a dishonorable discharge, thirty-three months confinement, total forfeitures, and reduction to E-1.[1]

Appellant's case is before us for review pursuant to Article 66(c), UCMJ.[2] Appellant raises four assignments of error, one of which merits discussion but no relief. Appellant argues the military judge abused his discretion by denying appellant's motion to compel the physical production of the expert assistant assigned to the defense team to further help defense prepare for appellant's court-martial and to attend the trial. We do not find that the military judge abused his discretion.

## BACKGROUND

In 2008, prior to his entry into the Army, appellant downloaded child pornography onto his computer using the peer-to-peer LimeWire file sharing program. Before trial, appellant told criminal investigators that prior to his enlistment in the Army he deleted the child pornography he downloaded in 2008.

Appellant entered active duty on 5 April 2010. After attending basic training and advanced individual training (AIT), before reporting to his first duty station on 16 September 2010, appellant went on leave to his home in Brentwood, California. On 16 September 2010, additional child pornography was transferred onto appellant's computer through the peer-to-peer LimeWire program.

After reporting to his first duty station, appellant's roommate discovered child pornography on appellant's computer and reported him to the appropriate authorities. Appellant's computer was confiscated and examined by the government's forensic computer expert.

### A. Government Expert Testimony

At trial, the government's computer forensic expert testified that the child pornography downloaded in 2008 was found hidden in a subdirectory of the operating system program in a folder labeled "carp [sic] to keep sealed forever." The government's expert testified that the folder was not created by the computer itself but rather was created by a user and affirmatively placed in the computer program operating system in such a way as to be hidden from the basic user. These images formed the basis for the possession of child pornography charge.

The government forensic expert testified that additional child pornography, separate from the 2008 material, was downloaded onto appellant's computer on 16 September 2010. Those files were located primarily in the LimeWire folder, under

---

[1] The convening authority provided appellant three months confinement relief for dilatory post-trial processing of his case.

[2] This Court heard oral argument in this case on 10 August 2016.

2

the user profile name of "Tim." These images and videos were found in the recycle bin of the computer. In the three months prior, the account had been inactive. These images formed the basis for the receipt of child pornography charge.

*B. Defense Expert Assistant*

Charges were referred against appellant on 12 October 2012. On 21 November 2012, Mr. Eric Lakes was appointed as a defense expert consultant in the field of digital and computer forensic examinations. Mr. Lakes was provided a compact disc by the government containing a "mirror image" of everything on appellant's computer and access to the government's expert during the pendency of the case prior to trial. The defense had approximately four months to work with Mr. Lakes in preparation for appellant's court-martial.

On 25 March 2013, two weeks before trial, appellant motioned the trial court to bring Mr. Lakes to Fort Hood to "analyze the hard drive" and to attend appellant's court-martial. Appellant did not, however, request to make Mr. Lakes a defense expert witness instead of a defense consultant. Defense's motion did, however, state that the defense "may desire to convert Mr. Lakes into an expert witness" during the merits portion of the trial. Defense counsel sidestepped the issue, stating he would not be able to make a decision to "convert" Mr. Lakes into an expert witness until after hearing the government's case. After listening to the government's case, however, defense made no such motion. Hence, there was never a request by defense to bring Mr. Lakes to appellant's court-martial as a witness–only as an expert consultant.

The military judge held a motion hearing on the issue the day before appellant's trial. He denied the defense's motion to physically bring Mr. Lakes to Fort Hood, but ordered the government to make Mr. Lakes available telephonically during appellant's court-martial so that Mr. Lakes could listen to the government expert witness testimony and help the defense counsel prepare cross-examination of the government witness and discuss the case. The military judge also ensured defense had time to consult with Mr. Lakes about government-created trial exhibits.

## LAW AND ANALYSIS

To be entitled to expert assistance, the burden is on the accused to demonstrate, on the record, the "necessity" for such services. *Id.* at 291. All that is required is that "competent" assistance be made available. *United States v. Burnette*, 29 M.J. 473, 476 (C.M.A. 1990). *See also Ake v. Oklahoma*, 470 U.S. 68, 83 (1985).

In *United States v. Gonzalez*, 39 M.J. 459, 461 (C.M.A. 1994), our superior court adopted a three-part analysis for establishing the need for expert assistance. An accused is entitled to an expert's assistance "before trial to aid in the preparation of his defense upon a demonstration of necessity." *United States v. Lee*, 64 M.J. 213, 217 (C.A.A.F. 2006)(quoting *United States v. Bresnahan*, 62 M.J. 137, 143

3

(C.A.A.F. 2005))(additional citation omitted). To demonstrate necessity, "the accused must show that a reasonable probability exists both that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial." *Id*. (internal quotation marks and citations omitted). Defense counsel must show: (1) why the expert assistance is needed; (2) what the expert assistance would accomplish for the accused; and (3) why the defense counsel were unable to gather and present the evidence that the expert assistance would be able to develop. *Id*. (internal quotation marks and citations omitted).

The defense has the burden to show there is more than the "mere possibility of assistance from a requested expert." *Bresnahan*, 62 M.J. at 143 (citation and quotation marks omitted). The defense must show a "reasonable probability" the expert would assist the defense and that denial of the expert would result in an unfair trial. *Id*.

We will not overturn a military judge's ruling on a request for expert assistance absent an abuse of discretion. *Lee*, 64 M.J. at 217.

The issue before us in this case is not whether appellant demonstrated a need for expert assistance; indeed, appellant was provided the expert assistance of Mr. Lakes during the four months prior to trial as well as telephonically during a portion of the court-martial. Rather, the focus of the defense challenge here is whether appellant received the full benefit of his appointed expert consultant by being denied the physical presence of their expert consultant at trial. In other words, appellant argues that in this case, the true benefit of the expert consultant would have been obtained through the expert physically attending the trial and aiding in trial preparation–not consultation pre-trial or consultation via telephone.

We find appellant's argument unpersuasive for the reasons that follow. First, the defense counsel failed to establish why the physical presence of expert assistance was needed or what his physical presence would accomplish. *Id*. In that light, appellant was provided the opportunity for a telephone consultation with the defense expert consultant, Mr. Lakes, to assist defense counsel in the trial preparation after the government's expert testified. *See Burnette*, 29 M.J. at 475-76. After consulting with Mr. Lakes, defense counsel was able to effectively cross-examine the government expert and extract a litany of potentially exculpatory concepts. The evidence did not, however, point to wrong conclusions or flawed expert methodology. The defense was able to present the theory of the case through cross-examination.

Second, defense counsel did not establish why he was unable to gather and present the evidence that the expert assistance would be able to develop had he been present at the court-martial. *Lee*, 64 M.J. at 217. Defense counsel are "expected to educate themselves to attain competence in defending an issue presented in a particular case, using a number of primary and secondary materials that are readily available." *United States v. Short*, 50 M.J. 370, 373 (C.A.A.F. 1999)(internal quotation marks and citation omitted). "Due process requires that the accused be

given the 'basic tools' necessary to present a defense, but defense counsel is responsible for doing his or her homework." *Id.* Here, appellant was given the basic tools.

Third, Mr. Lakes was *actually provided* as an expert to the defense. Only his physical presence at appellant's court-martial was denied. The defense did not ask for Mr. Lakes as an expert witness–but instead affirmatively chose to circumvent the rules of court in an attempt to reserve the "option" to call him as a witness after hearing the government's case. Rule for Courts-Martial [hereinafter R.M.C.] 703(c)(2) requires the defense to submit a written request to the government, containing an explanation why the defense considers the witness relevant and necessary as well as a synopsis of the expected testimony sufficient to show its relevance and necessity. To receive the benefits of an expert witness, an accused cannot play coy; the underlying rationale for expert witness must be fully developed. *See United States v. Ndanyi*, 45 M.J. 315, 321 (C.A.A.F. 1996). Appellant conflates his right to an expert consultant with his right to an expert witness under R.C.M. 703. This conflation is fatal as there was never a request for an expert witness. R.C.M. 703.

On the facts of this case, we conclude the defense failed to make an adequate showing of the necessity for the physical presence of the expert assistant. We further find appellant was not prejudiced by the military judge's ruling and that appellant received a fundamentally fair trial.

## CONCLUSION

Finding no error, the findings and sentence as adjudged and approved by the convening authority are AFFIRMED.

Senior Judge MULLIGAN and Judge HERRING concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court