# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SALUSSOLIA, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Corporal TERRY J. LEYBA**
**United States Army, Appellant**

ARMY 20160159

Headquarters, United States Army South
Douglas K. Watkins, Military Judge
Lieutenant Colonel Jim Tripp, Staff Judge Advocate

For Appellant: Major Julie L. Borchers, JA; Jeffery C. King, Esquire (on brief); Captain Steven J. Dray, JA; Jeffery C. King, Esquire (on reply brief).

For Appellee: Colonel Tamia M. Martin, JA; Captain Marc B. Sawyer, JA; Captain Meredith M. Picard, JA (on brief).

13 August 2018

----------------------------------
SUMMARY DISPOSITION
----------------------------------

Per Curiam:

A panel of officers and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of two specifications of sexual assault in violation of Article 120, Uniform Code of Military Justice, 10 U.S.C. § 920 (2012) [UCMJ].[1] The panel sentenced appellant to a dishonorable discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentenced as adjudged.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises two assignments of error, both of which merit discussion, but no relief.

---

[1] Consistent with appellant's plea, the panel found appellant not guilty of two specifications of sexual assault charged in the alternative to the specifications of which appellant was convicted.

**BACKGROUND**

Appellant and Specialist (SPC) MO attended a barbecue while serving in Guantanamo Bay, Cuba. During the barbecue, SPC MO became extremely intoxicated and was assisted to her barracks room by appellant and two other male soldiers. Upon entering SPC MO's room, they placed her on the bed. The two male soldiers then departed the room, leaving appellant alone with SPC MO. After waiting several minutes for appellant to come out, one of the soldiers began knocking on SPC MO's bedroom door, which was locked. No one answered.

Specialist CM, a female soldier residing in the adjoining barracks room, heard noise, woke up and entered the hallway to ascertain what was going on. After speaking to the two soldiers standing outside SPC MO's room, SPC CM started banging on SPC MO's room door. Eventually, SPC MO's room door was opened. Upon entering the room, SPC CM saw SPC MO passed out on her bed and naked from the waist down. SPC CM also noticed appellant hiding behind the door and told the two soldiers to get him out of the room.

Shortly after appellant left SPC MO's room, SPC CM told another female soldier, SPC AL, what had just occurred. Specialist AL approached appellant and asked him what happened. Appellant, who appeared intoxicated, responded that he raped SPC MO and stated "I just wanted to stick my dick in something." Appellant then ran from the area. His departure resulted in a unit search that eventually located him.

During the subsequent CID investigation, appellant waived his rights and admitted to performing oral sex on SPC MO while she was asleep and engaging in sexual intercourse with her while she was unconscious. SPC MO had no memory of what occurred between her and appellant in her room that night. She stated her last memory of the night was drinking a shot of tequila during the barbecue and then, "everything went black." Specialist MO further testified the next thing she remembered was waking up in the emergency room.

When SPC MO arrived at the emergency room the morning of the assault, she was still extremely intoxicated.[2] Once she was able to consent, Specialist MO underwent a sexual assault forensic examination later that day. The examination revealed several injuries to her vaginal area to include a laceration to the vaginal wall, and bruising to the cervix and labia.

---

[2] Blood drawn approximately five hours after SPC MO took her last drink registered her blood alcohol content at 0.268.

In preparation for trial, appellant's defense counsel requested the convening authority appoint an expert consultant in the fields of psychology and the psychological effects of alcohol on cognition and behavior. After the request was denied, defense counsel filed a motion to compel the appointment of such an expert. During the motion hearing, defense counsel amended their request to also have the forensic psychologist assist in the area of false confessions. Defense counsel argued an expert consultant in the area of false confessions was now necessary because recently provided DNA evidence "suggested" that appellant's admissions were false.[3] After considering the evidence presented and the pleadings of the parties, the military judge denied appellant's motion to compel an expert consultant to assist in either area.[4]

## LAW AND DISCUSSION

### *Denial of Expert Assistance*

On appeal, appellant asserts that he was denied the right to expert assistance in the field of psychology where there was evidence that the victim was blacked out rather than incapacitated and there was scientific evidence involving blood alcohol content.

An accused is entitled to expert assistance when he can show necessity. *United States v. Gunkle*, 55 M.J. 26, 31 (C.A.A.F. 2001) (citing *United States v. Garries*, 22 M.J. 288, 291 (C.M.A. 1986). The accused has the burden of establishing that a reasonable probability exists that an expert would be of assistance to the defense and that denial of expert assistance would result in a fundamentally unfair trial. *United States v. Freeman*, 65 M.J. 451, 458 (C.A.A.F. 2008) (citations omitted). There are three aspects to showing necessity: (1) why the expert assistance is needed; (2) what would the expert assistance accomplish for the

---

[3] We reject the suggestion. The United States Army Criminal Investigative Laboratory (USACIL) DNA report showed no semen was detected on SPC MO and appellant's DNA was not detected on SPC MO. While an amount of male DNA was found on SPC MO's pubic mound swabs and underwear swabs, the amount was insufficient for identification purposes. Foreign DNA was found on appellant's underwear and penile corona swabs, but could not be conclusively interpreted. Specialist MO's DNA was found on appellant's mouth and male DNA was detected on SPC MO's shorts, but it could not be conclusively interpreted.

[4] The military judge's written decision denying appellant's motion is contained in the record but not initially apparent to the parties or this court because it was not properly marked as an exhibit. Consequently, this court provided the parties an additional opportunity to amend their pleadings based on the military judge's written decision. Neither party modified its submissions.

accused; and (3) why is the defense counsel unable to gather and present the evidence that the expert assistance would be able to develop. *United States v. Gonzalez*, 39 M.J. 459, 461 (C.A.A.F. 1994) (citations omitted).

Courts review a military judge's ruling on a request for expert assistance for an abuse of discretion. *United States v. Lee*, 64 M.J. 213, 217 (C.A.A.F. 2006) (citing *Gunkle*, 55 M.J. at 32). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010) (citations omitted).

In this case, the military judge denied appellant's motion to compel an expert consultant, reasoning: (1) the defense did not meets its burden under Rule for Courts-Martial 905(c) because they failed to establish that they were unable to gather and present evidence that the expert assistance would be able to develop in these areas;[5] and (2) the defense failed to show why the denial of an expert consultant would result in an unfair trial.

We hold the military judge did not abuse his discretion in denying appellant's motion to compel an expert consultant because defense counsel clearly failed to meet the third prong of *Gonzalez* and also failed to show that denial of expert assistance would result in a fundamentally unfair trial. First, defense counsel provided virtually no evidence as to what efforts they made and why they were thus unable to understand, gather, develop, or present evidence in the areas of alcohol induced blackouts or false confessions. Rather, defense counsel attempted to meet their burden through unsupported assertions that they lacked the necessary education and experience to even attempt such a task.[6] Second, defense counsel offered nothing in either their written or oral pleadings that explained why a denial of expert assistance in either area would result in a fundamentally unfair trial. Third, defense counsel's motion for expert *assistance* repeatedly conflated the issues with those relevant to a request for an expert witness, to the point that it is difficult to make sense of the motion.

---

[5] The military judge reasoned that because defense failed to establish the third prong of *Gonzalez* it was unnecessary to address the remaining two prongs.

[6] Defense counsel asserted they needed a PhD to properly prepare a defense based on false confessions.

*Sixth Amendment Right to Effective Assistance of Counsel*

Next, we turn to appellant's second assignment of error, ineffective assistance of counsel. On appeal, appellant asserts he was denied his Sixth Amendment right to effective assistance of counsel when defense counsel failed to investigate the possibility of a false confession, failed to request a false confession expert, and were admonished on the record for lack of preparation. We find appellant has not met his burden.

To support an ineffective assistance of counsel claim, appellant must meet a two-prong test that his defense counsels' performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see also United States v. Green*, 68 M.J. 360, 361-62 (C.A.A.F. 2010). We have the authority to resolve an ineffectiveness claim on the prejudice prong, without resolving the first prong.[7] *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Appellant has not met his burden of establishing prejudice, that being "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 468 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Upon reviewing the record, we are convinced the result at trial would have been the same even if counsel had obtained an expert consultant in the area of false confessions.

First and foremost, appellant has not asserted to this court that the confession was indeed false, nor has he explained why additional investigation by counsel would have discovered evidence of this claim.

Additionally, appellant admitted on three different occasions that he sexually assaulted SPC MO in her barracks room. There is nothing to support a conclusion that appellant's statements to either a subordinate soldier or the CID agents were involuntary or coerced. Appellant's explanation of the circumstances surrounding his misconduct was also corroborated by credible witness testimony and physical evidence. This included medical proof of physical injuries to SPC MO's vaginal area.

The DNA results neither exonerated nor excluded appellant as a possible perpetrator. Rather the DNA results were inconclusive. Contrary to appellant's

---

[7] That we skip to the prejudice prong is not a concession that counsels' performance was deficient; we simply need not resolve that question here.

argument in support of the need for a false confession expert based on the DNA results, here the inconclusive DNA results were not inconsistent with, nor did they contradict, appellant's multiple admissions.

Lastly, appellant has not demonstrated that during the times of his admissions he was either suffering from a submissive personality or some other condition that rendered him susceptible to making false incriminatory statements in response to accusations of committing serious criminal offenses.

## CONCLUSION

Upon consideration of the entire record, the findings of guilty and the sentence as approved by the convening authority are AFFIRMED.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court