*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

_____

Before
CRISFIELD, HITESMAN, and GASTON
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Walter J. WILLIAMS III**
Corporal, U.S. Marine Corps
Appellant

**No. 201800275**

Decided: 19 March 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Eugene H. Robinson Jr.

Sentence adjudged 17 May 2018 by a general court-martial convened at Marine Corps Base Camp Foster, Okinawa, Japan, consisting of military judge alone. Sentence approved by convening authority: a reprimand, reduction to pay grade E-1, forfeiture of all pay and allowances, confinement for five years, and a dishonorable discharge.

For Appellant:
*Catherine M. Cherkasky, Esq.;*
*Lieutenant Commander Jeremy Wall, JAGC, U.S. Navy.*

For Appellee:
*Lieutenant Jonathan Todd, JAGC, U.S. Navy;*
*Captain Brian L. Farrell, U.S. Marine Corps.*

_____

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under NMCCA
Rule of Appellate Procedure 30.2.**

———————————————

PER CURIAM:

A military judge sitting as a general court-martial convicted Appellant, contrary to his pleas, of sexual assault and abusive sexual contact in violation of Article 120, Uniform Code of Military Justice [UCMJ], 10 U.S.C. § 920 (2016), for committing a sexual act and sexual contact upon the victim when he knew or reasonably should have known she was asleep.[1]

Appellant asserts two assignments of error: (1) the military judge erred by prohibiting the Defense from referring to the coercive nature of Appellant's polygraph examination as it related to his post-polygraph statement; and (2) the military judge erred in denying Appellant's request for an expert consultant in the field of toxicology. We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

On the night of 10 March 2017, Appellant attended a farewell party for another Marine which was held in an Okinawan bar located outside Camp Foster. The victim, a fellow Marine corporal who was acquainted with Appellant, was also in attendance at the farewell party. While at the party, the victim consumed a large quantity of alcohol. She later estimated that she drank half a pitcher of sangria and about six shots of tequila. At the party, Appellant and the victim spoke briefly, but had no significant interaction.

The victim was escorted back to her on-base barracks room by friends who knew she was very intoxicated. When the victim started throwing up, her friends stayed in the room to ensure that she was safe. About the same time, Appellant sent Facebook messages to the victim. One of her friends in her room responded and invited Appellant to the room. He showed up at the

---

[1] Appellant was also convicted of committing a sexual act and sexual contact upon the victim by causing bodily harm (by doing so without her consent), but the military judge conditionally dismissed those specifications on grounds of unreasonable multiplication of charges. Appellant was acquitted of committing sexual acts upon the victim while she was unconscious.

victim's room while two of her friends were still there. These two other Marines left soon thereafter, leaving Appellant alone with the victim, who, according to the two other Marines, appeared to be asleep when they left. The next morning, the victim woke up in her bed undressed from the waist down. Appellant was lying next to her, also undressed from the waist down. Appellant asked the victim if she wanted to get breakfast and she said no.

The victim had limited memories about the prior evening once she got back to her room. She vaguely remembered waking up to someone taking off her pants and waking up to someone penetrating her vagina with his penis. Other than those limited recollections, she had no memory of events.

The victim made a restricted report of sexual assault that day and underwent a sexual assault forensic exam. No toxicology examination was conducted because, according to the examining nurse, the hospital did not conduct toxicology tests when a victim made a restricted report. Soon afterwards, the victim changed her report to an unrestricted report.

Appellant was interrogated twice by special agents of the Naval Criminal Investigative Service [NCIS]. In his first interrogation, conducted the same day the victim made her report, Appellant said that the victim initiated sexual contact with him and was awake when he performed oral sex on her and then penetrated her vulva with his penis. Appellant was asked if he would take a polygraph examination. He said he would. The polygraph was administered by an NCIS polygraph examiner during a second interrogation over three months later. When Appellant again denied that the victim was asleep when he penetrated her, the NCIS polygrapher told him that the polygraph results indicated he was not being truthful and left no doubt that the victim was asleep when Appellant had sex with her. The polygrapher pressed Appellant on the point. After approximately 30 minutes of further denials, Appellant admitted that the victim was asleep when he performed oral sex on her and awoke after he had begun penetrating her vaginally with his penis. Appellant then reviewed and signed a written statement to that effect.

Appellant moved to suppress his admissions during the second interrogation as involuntary. Both the NCIS polygrapher and Appellant testified at length regarding the interrogation, including the administration of the polygraph, and a video recording of the entire session was submitted. Upon considering the evidence, filings, and arguments of the parties, the military judge denied the motion.

Appellant also filed a motion to compel the Government to provide expert assistance to the Defense in the form of a forensic toxicologist. The assistance was necessary, the Defense argued, because a "central question" in the case

was the victim's "level of alcohol intoxication and whether she was incapable of consenting due to impairment by alcohol."[2] The Defense also argued that "[m]ore broadly, a defense expert forensic toxicologist would be able to explain the relationship between alcohol consumption and memory, to include the difference between pass out and blackout."[3] The military judge denied the motion, determining that the Defense failed to prove that a toxicologist was necessary for an adequate defense, especially when there were no toxicological samples or reports for such an expert to analyze.[4]

Appellant elected trial before military judge alone. In his opening statement, Appellant's counsel referred to Appellant's statements during his first interrogation by NCIS, during which Appellant maintained the victim was awake during their sexual encounter. He then contrasted those statements with Appellant's admissions during his second interrogation three months later, telling the military judge, "You're going to hear about [the NCIS polygrapher]'s exceptional credentials; how he's the only NCIS agent in the entire far east region who's certified and trained to conduct polygraph exams."[5] Government counsel immediately objected to this comment without providing a basis, and the military judge immediately sustained the objection without elaboration.

The polygrapher subsequently testified about his interrogation of Appellant and provided foundation for admission of the written statement that he obtained from Appellant. Both parties elicited testimony from the polygrapher about the facts and circumstances of the interrogation, but neither side referenced the administration of the polygraph itself.

Additional facts necessary to resolve the AOEs are contained below.

## II. DISCUSSION

### A. The Military Judge did not Prohibit the Defense from Presenting Evidence of Coercion

Appellant asserts the military judge improperly excluded evidence of the coercive nature of Appellant's second interrogation by NCIS. We normally

---

[2] Record at 32; App. Ex. XVIII at 4.

[3] *Id.*

[4] Record at 160; App. Ex. XX at 5-6.

[5] Record at 221.

review a military judge's decision to exclude evidence for abuse of discretion. *United States v. Jasper*, 72 M.J. 276, 279 (C.A.A.F. 2013). In this case, however, we do not get to the question of whether the military judge abused his discretion because we find that the military judge did not exclude any evidence related to the facts or circumstances of Appellant's interrogation.

Appellant appears to argue that the military judge's action in sustaining the Government's objection to defense counsel's reference to a polygraph in his opening statement amounted to a broad curtailment of Appellant's ability to present evidence about the circumstances of the second interrogation. We disagree.

The rule regarding the admissibility of evidence of polygraph examinations provides:

> Rule 707. Polygraph examinations
>
> (a) *Prohibitions.* Notwithstanding any other provision of law, the result of a polygraph examination, the polygraph examiner's opinion, or any reference to an offer to take, failure to take, or taking of a polygraph examination is not admissible.
>
> (b) *Statements Made During a Polygraph Examination.* This rule does not prohibit admission of an otherwise admissible statement made during a polygraph examination.

Mil. R. Evid. 707. On its face, the rule's broad language appears to be a blanket prohibition on introducing any evidence that references a polygraph examination—even without reference to the results. However, since the conclusion of Appellant's trial, our superior court has held that the "prohibition on 'any reference to . . . [the] taking of a polygraph examination,' does not encompass evidence regarding the facts and circumstances of a polygraph examination procedure offered to explain the reason or motivation for a confession." *United States v. Kohlbek*, 78 M.J. 326, 329 (C.A.A.F. 2019).

While he gave no basis for sustaining the Government's objection to the Defense's comment in its opening statement about the NCIS interrogator being a polygrapher, based on its context it appears the military judge was operating under the plain reading of Mil. R. Evid. 707(a). If the defense counsel's statement was directed toward discussing the facts and circumstances of the polygraph examination to explain the reason or motivation for Appellant's post-polygraph confession (as contrasted with his largely exculpatory statements during his first interrogation) then this ruling would be erroneous under *Kohlbek*. In any case, opening statements are not themselves evidence, and are designed only to serve as a forecast of the "evidence [the parties] expect to be offered which they believe in good faith will be available and admissible." Rule for Courts-Martial 913(b), Discussion.

Further, "[a] finding or sentence of court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused." Article 59(a), UCMJ.

In order to mount a claim of error of the sort Appellant now appears to be lodging—that the military judge's ruling during opening statements somehow prevented or "chilled" the Defense from subsequently introducing evidence about the polygraph—it is incumbent on counsel to adequately raise and preserve the issue in the record. In order to preserve such a claim of error at trial, a party must ensure that there is a definitive ruling, either before or at trial, admitting or excluding evidence, and "if the ruling excludes evidence, [the] party informs the military judge of its substance by an offer of proof, unless the substance was apparent from the context." Mil. R. Evid. 103(a). In *Kohlbek*, for example, the appellant filed a pretrial motion in limine, in support of which he testified, arguing specifically that "he should be permitted, pursuant to his Sixth Amendment right to present a defense, to introduce evidence relating to the polygraph to explain the circumstances of his post-polygraph confession." *Kohlbek*, 78 M.J. at 330. The trial court's denial of the motion then preserved the issue for appeal. *Id.*

Here, by contrast, the record contains no indication that the military judge curtailed the Defense's ability to explore the circumstances and conditions of the second interrogation in an effort to show that Appellant's post-polygraph confession was involuntary. While the military judge had already denied the Defense motion to suppress Appellant's confession, nothing in his written ruling preemptively limited Appellant's ability to present evidence of coercion at trial, and the Defense filed no motion in limine seeking a ruling on that issue. During cross-examination of the polygrapher at trial, the Defense elicited testimony about the circumstances of the interrogation. There was only one objection from the Government during cross-examination, and that was a hearsay objection. At no point in the cross-examination did the military judge intervene sua sponte to limit the Defense's questioning of the polygrapher. After re-direct examination, the Defense elected not to ask any further questions on re-cross. The Defense also elected not to present any evidence on this issue during its case-in-chief. Thus, the record before us is devoid of a basis on which to find the Defense's ability to explore the circumstances of Appellant's second interrogation was curtailed.

As to whether the Defense's *desire* to ask more detailed questions about the interrogation was curtailed, to the extent that could somehow raise the issue, all we have before us is the trial court's ruling during opening statements. No clarification about the court's ruling was sought at trial, although we believe we can ascertain its basis from context. Most damaging

to Appellant's argument, however, is that he does not state what additional evidence, other than the fact that a polygraph examination was administered, he would have introduced but for the limitation he argues the military judge imposed. Based on the testimony elicited during the suppression motion, we can imagine what details might have been explored, but ultimately any finding in this regard rests on mere speculation. We simply have no basis in the record, either at trial or on appeal, to find as a factual matter what additional evidence the Defense was precluded from offering as a result of the military judge's ruling during opening statements.

Hence, we find there is no factual basis on which to conclude that the military judge limited Appellant's presentation of evidence about the facts and circumstances of his second interrogation. Absent that factual basis, we find no error relating to the admission or exclusion of any evidence in this regard, and no error materially prejudicial to Appellant's substantial rights relating to sustaining the objection to the Defense's comment during opening statements.

**B. The Military Judge did not Abuse his Discretion in Denying the Defense Request for Assistance from a Toxicology Expert**

Appellant asserts that the military judge erred in denying the Defense's request for expert assistance from a forensic toxicologist. On such motions to compel, "the accused has the burden of establishing that a reasonable probability exists that (1) an expert would be of assistance to the defense and (2) that denial of expert assistance would result in a fundamentally unfair trial." *United States v. Freeman*, 65 M.J. 451, 458 (C.A.A.F. 2008). We review a military judge's denial of a request for expert assistance for an abuse of discretion. *United States v. Bresnahan*, 62 M.J. 137, 143 (C.A.A.F. 2005). A military judge abuses his discretion if (1) his findings of fact are not supported by the evidence, (2) he uses incorrect legal principles, or (3) his application of the correct legal principle to the facts is clearly unreasonable. *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010).

Here, we find no basis to conclude that the military judge abused his discretion in denying Appellant's request for expert assistance. Our review of the military judge's ruling indicates that his findings of fact are supported by the record and the legal principles he cited are correct, nor does Appellant specifically argue to the contrary. Appellant's sole argument is that absent the requested expert assistance, his defense counsel had no reasonable way to present evidence of the victim's level of consciousness or memory due to her level of intoxication.

We believe that the military judge reasonably addressed this issue in his analysis. He concluded that "[t]here was no evidence presented that demon-

strated how a forensic toxicologist would be able to surmise the victim's level of intoxication given the lack of toxicological samples in this case."[6] He also concluded that "[t]here was no evidence presented that any toxicologist, forensic or otherwise, expected to conclude that the victim's mental or physical capacity would have been affected in a particular manner or how that would affect the accused's perception of the victim's state of consciousness during the alleged assault."[7] Based on these shortcomings in the evidence, the military judge determined that Appellant had not satisfied his burden of demonstrating that the expert would be of assistance to the Defense and that denial of the expert assistance would result in a fundamentally unfair trial. These were reasonable conclusions for the military judge to reach.

Even assuming error in the denial, we find no prejudice. The test for prejudice for abuse of discretion is whether the error materially prejudiced an appellant's substantial rights. *United States v. Lee*, 64 M.J. 213, 218 (C.A.A.F. 2006). Where denial of an expert deprives an appellant of the right to present a defense to the "linchpin of the prosecution case," the error is constitutional and must be harmless beyond a reasonable doubt. *United States v. McAllister*, 64 M.J. 248, 252 (C.A.A.F. 2007).

Here, multiple witnesses testified that the victim was asleep in her bed when she was left alone in her room with Appellant, an acquaintance with whom she had no prior romantic or sexual relationship. The victim's account was that she awoke the next morning lying next to Appellant, both of them naked from the waist down, and had vague recollections of someone pulling her pants off and later being roused from sleep by being vaginally penetrated. In his post-polygraph written statement Appellant admitted that the victim was *asleep* when he performed oral sex on her and that she awoke only after he had already begun vaginally penetrating her with his penis. This is precisely the charging theory upon which the military judge convicted Appellant—i.e., for committing a sexual act and sexual contact upon the victim when he knew or reasonably should have known she was *asleep*. Under such circumstances, whether the victim was blacked out due to intoxication for some portion of the time she was *awake* is of no moment. Accordingly, we find any assumed error in denying an expert toxicologist in this case was not materially prejudicial to Appellant's substantial rights and, for that matter, was harmless beyond a reasonable doubt.

---

[6] App. Ex. XX at 3-4.

[7] *Id*. at 4.

### III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and no error materially prejudicial to Appellant's substantial rights occurred. Articles 59, 66, UCMJ. Accordingly, the findings and sentence as approved by the convening authority are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court